in our final case, United States v. Perdue, and Ms. Thoma. Good morning, your honors, and may it please the court. Jenny Thoma, appearing for Lamar Perdue. Factually and legally, Mr. Perdue pleaded guilty to aiding and abetting the possession of a firearm during or in furtherance of a drug trafficking crime. This is factually so because at his plea hearing, the district court described the charge to him, count seven, as aiding and abetting the possession of a firearm during a drug trafficking crime. And when she asked him how he intended to plead. Could you maybe get closer to the microphone? Sure. Better? Yeah. Sorry. And when she asked Mr. Perdue how he intended to plead guilty to count seven, she asked him specifically that how he wished to plead to count seven, an aiding and abetting possession of a firearm in furtherance of a drug trafficking conspiracy. So he said, of course, guilty at that point. And no one asked Mr. Perdue how he would have pleaded to possession of a firearm if the government had proceeded under that theory. But it didn't. So as a factual matter, this is simply what he pled guilty to was aiding and abetting. And so we don't necessarily think that the court has to resort to legal authority on that. But if it did, we think that this court's decision in the United States versus Vann is instructive there, which held that even if even if the indictment could charge more than one means of the commission of a crime, even in that circumstance, a guilty plea doesn't admit guilt by all necessary or possible means that are included. I'm saying that the government charges any alternative, if that's what happened here, to avoid claims that it is constructively amended the indictment at trial. And so it simply is a protective or prophylactic measure. Wouldn't it make sense to charge in a way that gave the defendant the maximum notice of what counts might appear at trial so that you don't say, well, we didn't have any notice of that? Sure. I do. And I think there are two points that I would make in response to that. And the first is that aiding and abetting doesn't have to be pled in any indictment. It's, I don't know why ever put it there. And one reason, of course, is notice if the government intends to proceed under that theory. And so in this case, I think that the government evidenced throughout the entire history of this case, an understanding that that's how they were proceeding, that they were proceeding under the theory that there are three defendants in this house. Of course, there are three people who- Isn't it fairly well settled that if you have charges in the alternative, that if there is a sufficient factual basis for one of those charges, that there's a factual basis for the plea? There is. But the challenge that we've made here is- I thought that was a fairly well settled proposition. And why wouldn't it apply here? Because the error we're alleging isn't that there was a sufficient factual basis for the plea. I mean, it's very weak, and we maybe could have gone that route. But we're alleging a Rule 11b1g error, which is that he didn't have the necessary knowledge in order to make an informed plea to begin with. And of course, that's the error we're alleging. And that's why Rosemond is on point to that. But the gist, I mean, the gist of the charge, when you look at Count 7, the gist of the charge, the core of it, the essence of it, was the substantive offense. I'm not sure I would agree with that entirely. I think that- Because what I'm saying is, the reason I say that the substantive offense was the essence of the count, that the aiding and abetting business simply came in as an aside, and in clause. And then when you have the substantive offense, there's quite a bit of evidence that there's a factual basis for the substantive offense, including the fact that Mr. Perdue admitted the ownership of the Luger pistol. And that's only the beginning of it, because there were clearly evidence of the drug trafficking as well. So if the essence of the charge is a substantive count, and if there's a good deal of evidence in support of that, why wouldn't there be a factual basis? Well, again, to be clear, that that's not the error we're raising is the factual basis. I mean, I think the government's a brief approached it that way, but that's not the error we're alleging. But even so, to answer your question, there is, we don't dispute, there's plenty of evidence of drug trafficking activity. Mr. Perdue admitted that he is not challenging that whatsoever, involvement in the drug trafficking activity. What we are challenging is that he had advanced knowledge that someone was going to possess that firearm in furtherance of the drug trafficking crime. And that you're challenging that the district court at the plea colloquy did not advise him of the advanced knowledge requirement for the crime to which he was pleading guilty. Is that correct? That's correct. And notably, the government in a recent 28-J response or letter, I actually don't recall what it was, there were two, but it raised United States versus Kim. And I think that's very helpful by contrast, because in Kim, it turned out that the government had, anticipating the Supreme Court's decision in Rouen, what it might hold about the knowledge requirement, had gone ahead and preemptively put it in the indictment. And so it wasn't error for the district court. The error was not, it really didn't matter in Kim, because the indictment gave him direct knowledge through other means. And what we don't have here is anything in the indictment that might indicate that he needed to have advanced knowledge that a confederate would possess a firearm, and he didn't receive it. Plain error review, correct? So if we agree with you that there was error, and that it was plain, what about the other two elements of plain error review? How do you get around those two? It affected his substantive rights. I mean, the first of all, clearly the mandatory consecutive five years for Mr. Perdue, who is incredibly young and had no criminal history prior to this point, that's pretty significant in our view. Also, because, I mean, I wish that every 924C that came across my desk had facts this good. He would love to take that to trial. The evidence on the firearm itself was quite weak, connecting him to the firearm. And to be very clear also, he doesn't own that firearm. And I want to highlight the fact that when he entered his guilty plea, the district court and the colloquy then went on to inform Mr. Perdue that he was forfeiting. He pled guilty without a plea agreement, correct? Correct. Gained anything by pleading guilty? He did not. He did not. And in fact, he lost arguably five years by pleading guilty. And the district judge is having a conversation with him to specify, okay, well, what if any interest in this property did you have? And he says, well, the $431 in my pocket. And that's it. Didn't you have the wherewithal to object? I mean, if it's here on plain error, even if you got to the third prong of Olano, how has anyone's substantial rights affected if he obviously wanted to plead guilty? Because that decision wasn't- How could the substantial rights- His decision to plead guilty to the drug counts, again, we are alleging no error with respect to that. He did want to do that. His decision to plead guilty to count seven was because he wasn't informed by the district court, by the indictment, or anywhere else in this record that he needed to know in advance that a confederate was going to possess that firearm. And that would have made a difference. He could have, and in fact, easily could still go to trial on count seven. And it turns out that there is a part of the record that highlights a little bit of this. I was appointed basically at the appeal stage to file a notice of appeal, but his counsel below is talking at JA-192. They discussed that they had talked to these defendants about- How would anyone's substantial rights be affected if there was a factual basis for the substantive count? We don't believe that there was, your honor. I mean, agreed. He did say that, but he said that only after the district court said, not good enough, you need to talk to your attorney. And when he comes back into the courtroom, he's suddenly changing his story from, I have $431 to all of a sudden admitting 18,000. I'm sorry. Are you saying that there wasn't a factual basis for the substantive offense? Not for the count seven. There were for the drug counts, but for count seven, again, remember this particular firearm was found downstairs next to all of his co-defendants' belongings. He was upstairs. He was elsewhere. His fingerprints were not on the gun. He didn't own it. Didn't he admit to owning the gun? He did. But our contention is that that was clearly something that he was forced to admit to because the district court didn't like his first answer. I mean, at the plea hearing, he was forced to admit to that at the plea hearing? Right. He had counsel at the plea hearing, correct? He did. Okay. He did. And his counsel, initially, he says- I'm still having problems with this because not only does he admit to the ownership of the gun, but the things that were, I think, the things that were found in his bedroom was not only the Luger pistol- No, Your Honor. But there were controlled substances. And when Perdue allocated at the hearing, he admitted to conspiring with his co-defendants to distributing the controlled substances and to possessing with intent to distribute. And it seems to me that you have those admissions and the allocution, and you have the ownership of the firearm, and you have drugs in proximity to the firearm, and there was a factual basis, it would seem to me, at the very least, of a substantive count. And if that's the case, and he wanted to plead guilty, how can anybody's substantial rights be affected by this? If the substantive count is the gist of being his, if there's evidence of drugs in proximity to the gun, if he wants to plead guilty, how did this- how did this proceeding, if we're here on plain error, which I suspect we are, even assuming arguendo, that there was error, and not clear to me that anybody's substantial rights were- I don't think anybody- The gun was not found in his bedroom. As I said, I just- I don't see how you get- even if you get to 3- Arms 3 and 4 of Olano, I don't- I don't see how you get past them. The firearm was not found in his bedroom, to be clear. It was on a different floor of the house next to all of his co-defendant's belongings, his driver's license, his IRS documents. It was with someone else's belongings on a different floor of the house. He's not the owner of that gun. It wasn't stolen. His fingerprints weren't on it. There's very- apart from his forced admission at the plea hearing, in a conversation about forfeiture, which postdates the plea, there is actually no evidence to connect him to this firearm. None. What was it you wanted to highlight on JA-192? The attorneys were- the district- yes, thank you. The district court was talking to the attorneys for Mr. Mathis and Mr. Perdue about what options they had reviewed with their clients, and they talked about the options of taking and pleading straight up to the indictment with no plea agreement, going to trial and not testifying, going to trial and testifying. But what Mr. Perdue's counsel below never actually discussed with him was the ability to plead guilty to the to mix and match. He had- he actually was surprised to learn that that was a possibility. So he was not informed. He lacked all of the important things that anyone needed to know before they enter a guilty plea on count seven. And again, we don't dispute anything about the drug counts. He fairly accepts responsibility for those. But the count seven firearm simply was not his. And so for those reasons, Rosemond is on point. I mean, if it were differently, if your honor were correct, Rosemond would have come out quite differently. There are different, as the First Circuit said in Incarnation, there are different men's rates for those two things. And I see about time, so I'll be happy to answer any further questions the court has. Thank you. Mr. Flower? Thank you, Your Honor. May it please the court. My name is Brandon Flower. I represent the United States in this case. There's no plain error in this case. First off, the defendant hasn't been able to establish, number one, that there was error, two, that it was plain, and three, as the court has alluded to, that any substantial rights were affected. I'll start with the error issue. The indictment clearly charged... Is this an attack on a basis of a failure to advise, or is this an attack upon the absence of a factual basis? Which of those is it? I think, essentially, it's attempting to attack the plea to a substantive gun possession count by saying that he wasn't advised of the aiding and abetting Rosemont elements, the advanced knowledge element particularly. At the plea hearing, he was not advised of the advanced knowledge requirement. That's the argument opposing counsels make. So where in the plea call was he advised of the advanced knowledge requirement for the crime to which he was pleading guilty, aiding and abetting? Your Honor, the district court below advised Mr. Perdue of the two elements of possession of a firearm in furtherance of a drug trafficking crime. There was no specific discussion of Rosemont elements, advanced knowledge. So the district court did not advise him of the advanced knowledge requirement for the crime to which he was pleading guilty during the plea call? Is that what you're saying? No, Your Honor. That is not the crime to which he pled. He pled to the substantive offense of possession of a firearm in furtherance of drug trafficking crime. So if you could go back and look at the indictment, count seven, Mr. Perdue was charged along with his co-defendants aiding and abetting each other in that they did knowingly a firearm and specifically in this case the nine millimeter Luger. The indictment clearly charges him with possessing the Luger. The indictment clearly advises him what the charge is. The aiding and abetting each other in the subsidiary clause. You're saying he wasn't, he didn't plead guilty to aiding and abetting. He wasn't convicted of aiding and abetting. That is the descriptor of the offense in the indictment. Right. If you look at the substantive language of the offense itself and then what was discussed at the plea hearing in terms of the elements as well as the facts, what he pled to. Is there anywhere in the record where the district court or other of the parties describe the offense here as solely the possession of the firearm in furtherance of a drug trafficking crime? Where? It seems, at least what I've seen, it seems to always be discussed by the court and by both parties as an aiding and abetting the possession. That's how it was titled in the indictment and I think that's why there's that reference. But that's not what's controlling. What's controlling is a substantive language within the indictment itself and that's where I think what is important to look at at the plea hearing. The court advised the defendant as to the elements of possession of the firearm and then connecting that to being in furtherance of the drug trafficking crime. Then when they got, when we got to the point in the plea hearing as to the factual basis, the government obviously put on a witness. We put on a substantial amount of circumstantial and direct evidence of the defendant's participation in both those, in both the drug crimes as well as the firearm possession. And then significantly when the court questioned the defendant about the factual basis, specifically about the firearm, she asked him if he owned the Ruger. Judge Keeley did. The defendant said no, the Luger, the nine millimeter Luger. And then she again said the Ruger. He corrected her and said no, the Luger. He was making it very clear to her that he possessed the Luger. Now what I think is important here, this is at a plea hearing in which the defendant was under oath to tell the truth, in which later in the hearing he confirmed everything that he told the court was the truth. Also answering questions to the fact that he was not coerced, forced, threatened in any way whatsoever to enter that plea, to provide that information to the court. What Mr. Perdue is was there a duty to advise on the aiding and abetting business? It was in a subsidiary clause and as I think that the substantive offense was the heart and soul of the count. Was there a duty to advise on that or did the duty run to making sure there was a factual basis for the substantive offense? In this case, your honor, to the substantive offense. Why do you say that? Because of the way that the facts in this case came out when you see and the way that it was charged with the direct possession of the firearms and the facts that were laid out at the plea hearing, that's exactly what he did. Based upon all the evidence provided to the court. Plea hearing is not like a trial where all the burden is on the government to prove beyond a reasonable doubt. At the plea hearing, the court just has to be satisfied that there is a factual basis and it can come from different sources. In this case, it came from the government's witness as well as a defendant's own statement that he possessed the firearms. Was there a factual basis for a guilty plea to count seven, right? Yes, your honor. And you're sold on the count seven. It was a substantive offense that and that was perfectly advised that that was sufficient. Yes, your honor. Yes, that's the government's position. What I would also note, your honor, in regards to the plein air review, the Kim case, the United States became 71 F fourth 155 discusses how the court doesn't necessarily have to recite every single thing, every element in detail to provide the nature of the offense to the defendant. The record is clear that he wanted to plead guilty, isn't it? That's also important in this case. Yes, your honor. And so um, I mean, I don't, I don't see how I don't see how he was harmed in any way that this district court says you want to plead. You know, he clearly wanted to plead guilty. He didn't even need a plea agreement, but it was absolutely plain. He wanted to here's okay, here's what you're pleading guilty to, which is a 924 C. And is there a factual basis for it? Yeah, because he is mits ownership of the firearm. The firearm is found in proximity to drugs. It was probably a shrewd decision to go ahead or at least a defensible decision to go ahead and and plead to this. And, you know, you don't want to get into a situation where later bright buyers remorse suffices to overturn a plea for which there's ample, which ample number of facts support. Yes, your honor. Um, in regards to that, your honor, the Kim case also has an interesting discussion about, uh, that the factor regarding, uh, affecting his substantial rights. In that case, the court looked at the defendant's argument that they wouldn't have pled guilty. They even hesitated at one point in the court said, no, not really. No, you didn't. You very much wanted to plead guilty. That did not help the defendant in that case. And that's the same here because what happened and what defense counsel below made clear and they made this clear at the plea hearing that they met, they talked about the different strategies of different options in terms of going to trial or pleading, pleading to with a plea agreement, pleading without a plea agreement. And the defendant made the decision to do it without the plea agreement. In addition to that, in the record, there is a letter from um, case that dealt with an aiding and abetting offense on it. And it, and it said, you need to have advanced knowledge of a firearms presence. Okay. Yes, sir. All right. Is there any question here that he didn't have advanced knowledge of the firearms presence? No, there is not, your honor. Based on his mission, how can there be a Rosenman violation since the, the, the gist of Roseman was that you needed to have knowledge of the firearms presence and he's saying, I owned a firearm. Exactly, your honor. And so then that is knowledge of the firearms presence. In addition to that very specific fact, um, in defense counsel's affidavit, he advised, he reviewed all the counts and all the elements of every count with the defense counsel or with the defendant. So there is evidence in the record, uh, outside of even the plea hearing itself, that counsel reviewed those elements with him. Um, and I think that's important. The whole point of Roseman is we don't want to blindside a defendant with an aiding and abetting count, um, where he was completely unaware that what he was aiding and abetting involved a firearm. I mean, he lacked knowledge that he was aiding and abetting something of a firearm, but he had no knowledge of the firearm. But that, that just isn't, that just isn't the case here. Yes. He's owned it. He's owned it. Exactly, your honor. The aiding and abetting theory is relevant when you have a defendant who was not the person who possessed the firearm in a firearm situation under Roseman. That defendant, if it's not their gun, not in their possession, constructively or actually, they have to have advanced notice when that crime is, before that crime is committed, that one of the co-conspirators, co-defendants possess that. That is not the case when you're charged substantively with offense, which is what the defendant was charged here and what he admitted to owning, uh, owning the firearm. Whether it was found downstairs in the living room or in his bedroom is irrelevant because he said it was his. Um, there's also, in terms of the circumstantial evidence, overwhelming amount of evidence, the fact that the firearm was found in plain view in the living room, the common area of the residence that he said he had lived in for six months, um, that suggests that he, he knew that gun was there, uh, in addition to his admission that it was his firearm. Um, um, a question Judge Thacker raised I thought was a good one. Um, I asked, you know, has anybody been, uh, fairly treated here? And if so, their substantial rights would be affected, but, but his, his substantial rights weren't affected in light of his desire to plead guilty, his ownership of the, of the firearm, of the rest. There's no, there's no injustice done here. There's no injustice. I would note in addition to that, Your Honor, there was a question of whether the defendant received any benefits by pleading straight up to the indictment. And in fact, he did in terms of the sentencing guidelines on counts one through four, which were grouped. He got a three level reduction for acceptance of responsibility. In addition to that, the primary consideration that this defendant made in pleading straight up to the indictment without a plea agreement was that he didn't have to cooperate. That was the benefit to him. He did not want to cooperate had there been a plea agreement. Um, and that was his, appeared to be his driving motivation, plea hearing, uh, the information, uh, provided by counsel. He did not want to plead to the plea agreement, which is why a written plea offer was never tendered, even though one was discussed between government's counsel and both, uh, Mr. Mathis and Mr. Perdue's attorneys. Would the plea agreement have obliged him to cooperate? Yes. And that was the sticking point. That was the last thing he wanted. He wanted a plea, but he didn't want the agreement. Exactly, Your Honor. Um, so it was his choice and his wishes were respected. They absolutely were, Your Honor. Uh, and I think his attorney made clear that he explained all of this to him. And if you read the, if you read the letter contained, uh, as an exhibit, um, to the government's response on the habeas petition, it's around, I believe, JA 303, 304, 305. Defendant's counsel even explained to the defendant if he accepted a guilty plea, there would be cooperation. The gun count would probably be dismissed as part of that plea agreement. He explained how the sentencing guidelines would work in terms of a potential two-level enhancement for possession of a firearm under the sentencing guidelines for the drugs under 2D1.1. Um, all that was explained to the defendant. He knew all that when he voluntarily himself made that decision to plead guilty. In fact, during the plea colloquy, counsel for both Mr. Mathis and Mr. Perdue took a break and spoke with both defendants to be sure that that was their choice in how to proceed, straight up, uh, pleading straight up without the plea agreement. When they came back on the record, they affirmed that that was their client's decisions and then explained that later. It's, it was clear from this record that that's what Mr. Perdue wanted to do. In addition to that, he said the gun was his. He claimed ownership, possession of the gun, just as he was charged, uh, in the indictment in count seven, substantively as being a possessor of that firearm. Um, in addition, uh, I noted that Kim's case talked about the substantial rights and the defendant, um, wanting to plead guilty and being very adamant about that. Kim is also, I think, interesting too because it's analogous to this case in that the court said in looking at substantive rights are affected, you can look at the strength of the evidence. Now, obviously, defense counsel or, or, um, Ms. Thoma has a different opinion as to what the evidence showed, but trial counsel did not, as he explained in his letter that's in the JA to, uh, Mr. Perdue, uh, advised him, I think, of the, the strength of the evidence. And then when you look at the evidence, again, both circumstantial and direct, and this court, appellate courts, courts have readily concluded that there's no difference in terms of the weight of circumstantial direct evidence. It's valued the same and it's up to a, a binder of fact, I suppose, to determine, uh, how to weigh that evidence, but there's no difference between circumstantial and direct evidence. And here, um, there was a substantial amount of evidence, um, that showed not only was the, uh, possession of a firearm. Now, if this case sort of went to trial. I know, counsel, I don't want to cut you short, but you are repeating yourself. Okay. I apologize, Your Honor. And can I, let me ask my good colleagues if they have some questions for you, but we are going over the same thing. I don't have any further questions. Ms. Floyd. I don't have any questions. Thank you, counsel. Thank you, Your Honor, very much. Um, Ms. Thelma, you have some rebuttal time. Thank you, Your Honor. I'd like to make five points if I can get them in, uh, with respect to this, what Mr. Perdue was convicted of and pled guilty to, it wasn't just how it was titled in the indictment. It was how it was titled in the indictment, but it was also how it was said at the plea hearing. It's how it's listed in the judgment and commitment order. And that's how the government described it. My colleague described it when responding to Mr. Perdue's 2255 motion. This is all in the record. It's never once referred to as a substantive count, not once. Second, Mr. Perdue's statements, to be clear, I know we highlighted this in our, in our briefs, but to point this again, the same district judge who got those statements from Mr. Perdue at his plea hearing later ruled them inadmissible in his co-defendant's trial because they were too untrustworthy to admit. And she said that under the bumpest factors, they were evidencing a motivation to lie to protect his co-defendants. And she found them... Which statements are you talking about? When he admitted to owning the gun? When he came back, he first, he said, I owned my interest for forfeiture purposes is $431 in my pocket. She said, try again. He leaves. He talks to counsel. He comes back. He says, I owned all of the $18,000 found in the house and the Lugar. He's suddenly accepting responsibility. And you're saying that the district court judge found them untrustworthy, those statements, because Mr. Perdue was really saying that because he didn't want to implicate his co-defendants? That's correct, Your Honor. Doesn't that go to the government's point that one of the benefits that he received by pleading without a plea agreement was he wouldn't have to cooperate against his co-defendants? That makes it seem like he really did not want to cooperate against his co-defendants. That is a good point. And in response to that, I would point out, as we said in our reply brief, that Mr. Perdue could have easily gone to trial also without cooperating. That was and is still a very viable option for him and one that I would be happy to pursue if it comes out that way. So it's really hard to imagine how an additional five years is a benefit under those circumstances, because had he understood that he could have mixed and matched, pled guilty to the drug counts, gone to trial on count seven, that certainly would have made a huge difference for him. I also wanted to add that a blank statement about his counsel about reviewing the elements without any reference to how he described those elements or whether he incorporated Roseman is not sufficient. And again, Mr. Perdue. Now, one question I ask when people want to seek rescission of a plea agreement, even if we agreed with you, where does this leave Mr. Perdue? He says you can send it back and he wanted to plead all along. And is he going to change his mind and opt for a trial? And I might suggest that given the mountain of evidence that's against him, I don't think his opportunities at trial would look particularly rosy. I don't see where the case goes from here. He made a perfectly sound decision. He pleaded guilty for a reason. It was a factual basis for the substantive count, more than enough is a mountain of evidence. So we send the case back and then it goes to trial. I think, frankly, after reading this record, the chances of him prevailing in any sort of trial are extremely slim. He had that chance when he pled guilty and he and his attorney assessed the mountain of evidence against him and decided to plead. Why would we undo that and what good would ever come of it? There was quite a bit of evidence against him as to the drug counts, but the evidence against him as to the gun was very weak. And I'd be happy to take that to trial again. And Mr. Perdue had known that that was an option when he entered his plea. I think that that would have made a huge difference as well. The evidence connecting him to the gun is, frankly, very, very weak compared to what we normally see and be happy to take that to trial, Your Honor. And I see that my time is just about over. So I would simply note that if this theory was correct, Roseman would have come out differently because in Roseman, the government actually pursued both theories. Here, they only ever pursued aiding and abetting by everything that's ever been admitted into this record. So we ask the court to vacate the count seven plea conviction and sentence. All right. Thank you very much. We will adjourn court, come down and re-counsel. And I understand from our good courtroom deputy that we took conference here. Okay. That's what I understood we would do. Adjourn court and let us come down and re-counsel. And then we will ask that the courtroom be cleared so that the judges can conference in confidence. This honorable court stands adjourned, sign die, God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Henry F. Floyd